GRUETTER v. CUMBERLAND TELEPHONE & TELEGRAPH CO.

(Circuit Court, W. D. Tennessee, W. D.   September 13, 1909.)

No. 3,578.

1. REMOVAL OF CAUSES (§ 4*)—SUITS REMOVABLE—ACTION FOR PENALTY.
    Since Act Tenn. 1885, c. 66, § 11, prescribing a penalty against telephone companies for discrimination in service, creates no criminal offense, and provides for no criminal procedure or remedy for any public wrong, and merely for punitive damages for the breach of a common-law obligation or private wrong, a suit brought by an individual to recover the penalty is removable as a civil action, under Act Cong. Aug. 13, 1888, c. 866, § 2, 25 Stat. 434 (U. S. Comp. St. 1901, p. 509) correcting the enrollment of Act March 3, 1887, c. 373, 24 Stat. 552, and amending Act March 3, 1875, c. 137, 18 Stat. 470.
    [Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 11–20; Dec. Dig. § 4.*]

2. REMOVAL OF CAUSES (§ 4*)—SUITS REMOVABLE—DETERMINATION—"CIVIL NATURE."
    In determining whether a suit to enforce a penalty provided by a state statute is one "of a civil nature" which is removable under section 2, Act

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Aug. 13, 1888, c. 866, 25 Stat. 434 (U. S. Comp. St. 1901, p. 509), correcting the enrollment of Act March 3, 1887, c. 373, 24 Stat. 552, and amending Act March 3, 1875, c. 137, 18 Stat. 470, the question is not whether the state statute is to be considered as remedial or penal for the purpose of the application of the rule of strict construction, but whether the action brought to enforce the penalty provided by the statute is essentially civil in its nature, as distinct from one which is criminal, or quasi criminal.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 11–20; Dec. Dig. § 4.*]

**3. ACTION (§ 18*)—"CIVIL ACTION."**

A civil action is one brought to recover some civil right or to redress some wrong not a crime or a misdemeanor; and at common law is an action to recover private or civil rights or compensation for their infraction.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 95–104; Dec. Dig. § 18.*

For other definitions, see Words and Phrases, vol. 2, pp. 1183–1193; vol. 8, p. 7603.]

**4. REMOVAL OF CAUSES (§ 26*)—NONRESIDENT PARTIES.**

A suit commenced in a state court in a federal district in which neither the plaintiff nor the defendant resides cannot be removed to the Circuit Court of the United States of such district by a nonresident defendant on the ground of diversity of citizenship, as such court would have had no jurisdiction of the same as an original suit under Act March 3, 1887, c. 373, 24 Stat. 552 as amended by Act Aug. 13, 1888, c. 866, § 2, 25 Stat. 434 (U. S. Comp. St. 1901, p. 509), and, where the objection to the jurisdiction of such Circuit Court has not been waived by the defendant, the suit must be remanded to the state court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 60–63; Dec. Dig. § 26.*]

**5. REMOVAL OF CAUSES (§ 107*)—PROCEEDINGS TO REMAND—RESIDENCE OF PARTIES—EVIDENCE.**

On plaintiff's motion to remand the cause to the state court, his residence within the district was sufficiently shown by a recital in a declaration filed by him the same day that the petition to remove was filed, describing himself as a citizen of a county within the district.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 225–234; Dec. Dig. § 107.*]

**6. WORDS AND PHRASES—"CITIZEN."**

A phrase describing one as "a citizen of Franklin county, Tennessee," sufficiently describes him as a citizen of the state and a resident of the county.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 1164–1174; vol. 8, pp. 7602–7603.]

**7. REMOVAL OF CAUSES (§ 92*)—RECORD—SUFFICIENCY.**

While facts necessary to give the federal court jurisdiction must affirmatively appear on removal of a cause, no precise and technical form is required; it being sufficient that the necessary facts appear in the record.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 190; Dec. Dig. § 92.*]

**8. EVIDENCE (§ 10*)—JUDICIAL NOTICE—COUNTIES.**

The federal Circuit Court takes judicial notice that a particular county is within the district.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 9–14; Dec. Dig. § 10.*]

**9. REMOVAL OF CAUSES (§ 86*)—PRAYER—SUFFICIENCY.**

A prayer "that said surety and bond may be accepted that his suit may be removed into the next circuit court of the United States" is sufficient

as a prayer for a removal; a semicolon after the word "accepted" being obviously inadvertently omitted.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 166–179; Dec. Dig. § 86.*]

Action by John W. Gruetter against the Cumberland Telephone & Telegraph Company. On plaintiff's motion to remand. Motion overruled.

Crownover & Crabtree, for plaintiff.

W. L. Granbery, for defendant.

SANFORD, District Judge. After careful consideration, I have reached the conclusion that the plaintiff's motion to remand this suit to the state court from which it was removed by the defendant is not well taken. ·

1. The first ground of the motion is that this is a suit to recover a penalty, and not an action of a civil nature that can be removed to the federal court on the ground of diverse citizenship. While I held in January of this year in the case of Brown v. Cumberland Telephone Company, 181 Fed. 246, at Memphis, that a suit of this character brought against a telephone company under Act Tenn. 1885, c. 66, § 11, is an action for "statute penalties," which, under section 2772 of the Tennessee Code (Shannon's Code, § 4469), is barred within one year after the cause of action accrues, I am nevertheless of opinion that, although a suit for penalties, it is "a suit of a civil nature at law," which is removable to the federal court under section 2, Act Aug. 13, 1888, c. 866, 25 Stat. 434 (U. S. Comp. St. 1901, p. 509). The Tennessee statute provides that every telephone company doing business within the state shall supply all applicants for telephones and telephone facilities without discrimination or partiality, and shall not impose any condition or restriction upon any such applicant not imposed impartially upon all persons or companies in like situations, "under penalty of one hundred dollars for each day such company continues such discrimination and refuses such facilities, * * * to be recovered by the applicant whose application is so neglected or refused." It was held by the Circuit Court of Appeals for this circuit in Cumberland Telephone Co. v. Kelly, 160 Fed. 316, 87 C. C. A. 268, that this statute is directed only against discriminations in telephone service, and is merely declaratory of the common-law obligation of telephone companies not to discriminate, giving a new remedy and enforcing the common-law obligation by severe penalties. The statute is therefore in its essence one which merely declares and enforces a common-law obligation of a civil nature. It does not create any criminal offense, or provide for any criminal prosecution. It imposes no fine or penalty which may be recovered by the state. It provides for no qui tam action by which any injury to the public may be punished by fine. It simply, in its last analysis, recognizes the common-law obligation of telephone companies to furnish undiscriminating service, and enforces this obligation by a severe penalty, in the nature of punitive damages, recoverable

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in a civil action brought by the person against whom there has been a wrongful discrimination.

In determining whether a suit to enforce a penalty provided by a state statute is one "of a civil nature" which is removable under section 2, Act Aug. 13, 1888, c. 866, 25 Stat. 434 (U. S. Comp. St. 1901, p. 509), correcting the enrollment of Act March 3, 1887, c. 373, 24 Stat. 552, and amending Act March 3, 1875, c. 137, 18 Stat. 470, the question is not whether the state statute is to be considered as remedial or penal for the purpose of the application of the rule of strict construction, but whether the action brought to enforce the penalty provided by the statute is essentially civil in its nature, as distinct from one which is criminal, or quasi criminal, in its nature. While the precise question here involved appears never to have been adjudged, I think a just rule fairly deducible from the trend of authority, and based upon sound reason, is this: That where the statute does not create any criminal offense or provide for any criminal prosecution or for the recovery by the state of any fine or penalty for any public wrong, but merely provides a money penalty for a private wrong, recoverable by the aggrieved party for his own benefit, a suit brought to recover such penalty is in its essence one of a civil nature, even though the penalty imposed by the statute amounts to punitive damages, and is hence removable to the federal court. "A civil action is an action brought to recover some civil right, or to obtain redress for some wrong not being a crime or misdemeanor." Burrell's Law Dict. 294. "An action is 'civil' when it lies to enforce a private right, or redress a private wrong. It is 'criminal' when instituted on behalf of the sovereign or commonwealth in order to vindicate the law by the punishment of a public offense." Rapalje & Lawrence's Law Dict. 21. A civil action at common law is "an action which has for its object the recovery of private or civil rights or compensation for their infraction." Bouvier's Law Dict. (15th Ed.) 317. In Huntington v. Attrill, 146 U. S. 657, 667, 673, 676, 13 Sup. Ct. 224, 36 L. Ed. 1123, in which it was held that a state statute, making the officers of a corporation who sign and record a false certificate of the amount of its capital stock liable for all its debts, was "in no sense a criminal or quasi criminal law," and not a penal law in the international sense so that it could not be enforced in the courts of another state, Mr. Justice Gray, delivering the opinion of the court, said:

"Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal. The action of an owner of property against the hundred to recover damages caused by a mob was said by Willes and Buller to be 'penal against the hundred, but certainly remedial as to the sufferer.' Hyde v. Cogan, 2 Doug. 699, 705, 706. A statute giving the right to recover back money lost at gaming, and, if the loser does not sue within a certain time, authorizing a qui tam action to be brought by any other person for threefold the amount, has been held to be remedial as to the loser, though penal as regards the suit by a common informer. Bones v. Booth, 2 W. Bl. 1226; Brandon v. Pate, 2 H. Bl. 308; Grace v. McElroy, 1 Allen (Mass.) 563; Read v. Stewart, 129 Mass. 407, 410; Cole v. Groves, 134 Mass. 471. As said by Mr. Justice Amhurst in the King's Bench and repeated

by Mr. Justice Wilde in the Supreme Judicial Court of Massachusetts: 'It has been held in many instances that, where a statute gives accumulative damages to a party grieved, it is not a penal action.' Woodgate v. Knatchbull, 2 T. R. 148, 154; Read v. Chelmsford, 16 Pick. (Mass.) 128, 132. Thus a statute giving to a tenant ousted without notice double the yearly value of the premises against the landlord has been held to be 'not like a penal law where a punishment is imposed for a crime,' but 'rather as a remedial than a penal law,' because 'the act indeed does give a penalty, but it is to the party grieved.' Lake v. Smith, 1 Bos. & Pul. (N. R.) 174, 179, 180, 181; Wilkinson v. Colley, 5 Burrow, 2694, 2698. So in an action given by a statute to a traveler injured through a defect in a highway for double damages against the town it was held unnecessary to aver that the facts constituted an offense, or to conclude against the form of the statute, because, as Chief Justice Shaw said: 'The action is purely remedial, and has none of the characteristics of a penal prosecution. * * * Here the plaintiff sets out the liability of the town to repair, and an injury to himself from a failure to perform that duty. The law gives him enhanced damages; but still they are recoverable to his own use, and in form and substance the suit calls for indemnity.' Reed v. Northfield, 13 Pick. (Mass.) 94, 100, 101, 23 Am. Dec. 662. The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual. According to the familiar classification of Blackstone: 'Wrongs are divisible into two sorts or species—private wrongs and public wrongs. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals, and are thereupon frequently termed civil injuries. The latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community; and are distinguished by the harsher appellation of crimes and misdemeanors.' 3 Bl. Com. 2. The question whether a statute of one state which in some aspects may be called penal is a penal law in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether the purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act."

In State v. Chicago, B. & Q. R. Co. (C. C.) 37 Fed. 497, 3 L. R. A. 554, in which it was held that an action brought by the state to recover a forfeiture for an offense declared to be a misdemeanor was, though civil in form, one of a criminal nature which was not removable to the federal court, Mr. Justice Brewer, then Circuit Judge, after citing various authorities stating the distinction between matters of a civil and a criminal nature, including the definitions from the law dictionaries above quoted, said:

"That a case may partake something of the nature of both is as might be expected, and naturally it is not always clear which element predominates. Thus in a civil action for damages for a tort punitive damages are sometimes awarded. There is therefore present the double element of a redress of a private injury and the punishment of a public wrong; but, inasmuch as the full recovery goes to the injured party, as he controls the whole proceeding, and the form of the action is civil, it may well be inferred that the civil element predominates, and the action be considered one of a civil nature."

And in Black's Dillon on Removal of Causes, § 24, p. 33, the first rule given for distinguishing between actions essentially penal in their character and those of a civil nature is that:

"When the money to be recovered in the action, though denominated a 'fine,' 'penalty,' or 'forfeiture,' is really for the benefit of a private party who has suffered loss or detriment, the action is civil and not penal"—citing Robertson v. Kottell, 64 N. H. 430, 14 Atl. 78.

The cases relied on by the plaintiff are not, I think, in substantial conflict with this rule. Thus, to refer to the principal cases so relied

on, in State v. Chicago, B. & Q. R. Co., supra, the suit was held not to be removable on the specific ground that the penalty provided by the statute went entirely to the state, which controlled the litigation and received all the proceeds, and that the aim of the statute was to punish for a violation of the criminal laws of the state; and a similar decision in State v. Alleghany Oil Co. (C. C.) 85 Fed. 870, was based on the ground that the penalty was due to the state and was inflicted for a violation of the state statute enacted to secure public and not private rights. In both State v. Grand Trunk Ry. (C. C.) 3 Fed. 887, and Lyman v. Boston & A. R. Co. (C. C.) 70 Fed. 409, the suits which were held to be not removable to the federal courts were brought under indictments in the state courts, under statutes providing for fines against railway companies causing the death of persons by negligence, which should go to the family of the deceased. In the first of these cases the state court had previously held that a proceeding under the statute was a criminal proceeding for an infraction of the law of the state, which construction was followed by the federal court; and in the second the statute specifically provided that the suit should be prosecuted by indictment, and both the decisions of the state court that actions under the statute were for a penalty and the nature of the prescribed procedure were among the grounds upon which the court concluded that the suit was an action to recover a penalty under a state law, to be exacted partly, if not exclusively, as an act of public law and in defense of the public justice of the state, and hence not removable. In the case of Hamilton v. Brewing Co. (C. C.) 100 Fed. 675, the recovery of money paid for intoxicating liquor sold in violation of the state statute evidently was not provided as compensation for any loss or detriment to the buyer or as damages for any private wrong, but solely as a punishment for a violation of the public law in reference to the sale of intoxicating liquors. And in State v. Land & Cattle Co. (C. C.) 41 Fed. 228, while it was held that under a state statute making it unlawful to graze cattle on public lands unless leased from proper authority, and providing that a violation of the act should be a misdemeanor punishable by fine, a suit brought by the state to recover such fine was one to enforce the criminal law of the state, which was not removable to the federal court, it was also said that it seemed that a suit brought by the state under another section of the same act providing that the owner of cattle should be liable to the state in a fixed sum per year for each 640 acres used contrary to the act, to be recovered in a civil action, "was by the law and in fact a suit of a civil nature, to wit, a suit for trespass, in which the damages were liquidated by the statute," and hence removable. See, also, State v. Cattle Company (C. C.) 49 Fed. 593. The cases involving a decision of the question whether or not a given statute is remedial or penal for the purpose of the application of the rule of strict construction likewise have in my opinion no direct application to the question under consideration.

Therefore, after careful consideration of the important question involved, and with great regret that I am unable to concur in the opinion of the learned circuit judge of the state court, I am constrained to conclude that as the Tennessee statute in question creates no crim-

inal offense, and provides for no criminal procedure or remedy for any public wrong, but merely for punitive damages for the breach of a common-law obligation or private wrong, a suit brought by the injured person to recover the penalty thereby imposed is essentially civil in its nature and removable to the federal court. I am strengthened in this view by the fact under Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178), prohibiting interstate carriers from confining live stock in cars longer than 28 consecutive hours without unloading for rest, water, and feed, and imposing penalties for a violation of the act, recoverable in a civil action in the name of the United States, it has been held that, although the statute is penal, an action to recover the penalty is in effect a civil action for debt, and the government is entitled to have a judgment therein reviewed upon writ of error. United States v. Baltimore & O. S. W. R. Co. (6th Circuit) 159 Fed. 33, 38, 86 C. C. A. 223; Montana Cent. Ry. v. United States (9th Circuit) 164 Fed. 400, 90 C. C. A. 388; United States v. New York, C. & St. L. R. Co. (2d Circuit) 168 Fed. 699, 94 C. C. A. 76. Likewise an action brought by the United States against a railroad company under the safety appliance act (Act March 3, 1893, c. 196, § 6, 27 Stat. 532 [U. S. Comp. St. 1901, p. 3175]), providing a penalty for each violation, recoverable in a suit brought by the United States attorney, is a civil action in which the judgment is reviewable at the instance of the government on writ of error. United States v. Louisville & N. R. Co., 167 Fed. 306, 93 C. C. A. 58; United States v. Illinois C. R. Co. (6th Circuit) 170 Fed. 542, 95 C. C. A. 628; Chicago, B. & Q. R. Co. v. United States (8th Circuit) 170 Fed. 556, 95 C. C. A. 642.

In United States v. Illinois C. R. Co., supra, Severens, Circuit Judge, delivering the opinion of the court, said:

"Probably in all the systems of law in the state and federal governments there are instances where to civil liabilities there attached penalties, there being something wanton or gross or otherwise peculiar to the liability. Yet such penalties are enforced in civil actions."

And in Chicago, B. & Q. R. Co. v. United States, supra, Adams, Circuit Judge, delivering the opinion, said:

"This is not a criminal case. It is a civil action in the nature of the action of debt to recover a penalty, which Congress in its wisdom saw fit to impose upon railroads to secure compliance with certain specified regulations made to promote the safety of passengers and freight carried in interstate commerce and to protect employés engaged in that service. * * * The act made it unlawful for railroads to use cars not equipped as therein provided, and thereby imposed a duty upon railroad companies to equip cars accordingly. * * * A breach of this duty, like the breach of most civil duties, naturally entailed a liability, and Congress fixed that liability not as a punishment for a criminal offense, but as a civil consequence, so far as the government was concerned, of a failure to perform the duty which in the opinion of Congress the public weal demanded should be performed by railroad companies."

If an action to enforce a money penalty recoverable by the government in its sovereign capacity for breach of a public duty imposed by statute is a civil action for debt, it follows, a fortiori, that an action to recover a money penalty brought by the party injured by a violation

of a common-law obligation and a private wrong, and for his sole benefit, is also a civil action.

The view that a suit to recover the penalties imposed by the Tennessee statute is one of a civil nature within the jurisdiction of a Circuit Court of the United States, furthermore, finds strong confirmation in the fact that in the case of Cumberland Telephone Company v. Kelly, above cited, the Circuit Court of Appeals for this circuit entertained and decided on the merits a writ of error in an action brought against the telephone company in the Circuit Court of the United States for the Western District of Tennessee to recover penalties under this statute and remanded the case for a new trial in the Circuit Court, instead of directing that the case be dismissed, as it would have done on its own motion had it been of opinion that the Circuit Court had no jurisdiction of the case. Such action on the part of the Circuit Court of Appeals, without doubting the jurisdiction of the Circuit Court, is significant as indicating its view that a suit to recover such statutory penalties was one within the jurisdiction of the federal courts. Huntington v. Attrill, 146 U. S. 657, 680, 13 Sup. Ct. 224, 36 L. Ed. 1123; United States v. Baltimore & O. S. W. Co. (6th Circuit) 159 Fed. 33, 39, 86 C. C. A. 223.

2. The second ground of the motion to remand, that the petition for removal and the record do not show that this suit is sought to be removed to the Circuit Court of the United States in the district in which either the plaintiff or defendant resides, is not well taken. It is true that a suit commenced in a state court in a federal district in which neither the plaintiff nor the defendant resides cannot be removed to the Circuit Court of the United States of such district by a nonresident defendant on the ground of diversity of citizenship, as such court would have had no jurisdiction of the same as an original suit under the Acts of 1887–1888, and, where the objection to the jurisdiction of such circuit court has not been waived by the defendant, the suit must be remanded to the state court. Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264; In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904; Western Loan & Savings Co. v. Mining Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101; Louisville & N. R. Co. v. Fisher (6th Circuit) 155 Fed. 68, 83 C. C. A. 584, 11 L. R. A. (N. S.) 926.

I am of opinion, however, that the fact that the plaintiff was a resident of the Middle District of Tennessee at the time the petition for removal was filed affirmatively appears from the declaration which he filed in the state court on the same day, December 17, 1908, in which he is described as "a citizen of Franklin county, Tenn.," a phrase which, in my opinion, giving to the words their natural and obvious meaning, sufficiently describes the plaintiff as a citizen of Tennessee and a resident of Franklin county. To describe a person as being of a certain county can only mean, as words are ordinarily used, that he is a resident of that county. See Grand Trunk Ry. v. Twitchel (1st Circuit) 59 Fed. 727, 8 C. C. A. 237, in which this is apparently implied. While it is true that the facts necessary to give the federal court jurisdiction must affirmatively appear, no precise and technical form of words is required, and it is sufficient if the necessary facts appear in

the record, although stated inartificially and not in technical language. See 1 Street's Fed. Pract. § 331, p. 192.

While, therefore, it would have removed all possible doubt on this point if the defendant's petition for removal had shown the plaintiff's residence in accordance with the form given in 2 Loveland's Forms of Fed. Pract. 1573, which, since the decision in Ex parte Wisner, might well be supplemented by averring in terms a residence within the district to whose circuit court the removal is sought, I am yet constrained to hold that, as the plaintiff was described in his own declaration filed on the same day as being a citizen of a county which the court judicially knows to be within such district, it therefore sufficiently appears from the record that the case was removed to the Circuit Court of the United States for the district in which the plaintiff then resided, and that the second ground of the motion to remand must be accordingly overruled.

3. The third ground of the motion to remand, that "the defendant does not specifically pray a removal of this cause to the Circuit Court of the United States," is likewise not well taken. The defendant in the last paragraph of the petition for removal specifically prays "that said surety and bond may be accepted that his suit may be removed into the next Circuit Court of the United States," etc. The meaning of this prayer is unmistakable, and its effect is not destroyed by the obviously inadvertent omission of a semicolon after the word "accepted."

An order will accordingly be entered overruling the motion to remand.

NOTE.—A petition for writ of mandamus in this case was dismissed by the Supreme Court.—Ex parte Gruetter, 217 U. S. 586, 30 Sup. Ct. 690, 54 L. Ed. ——.